IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN VAN LARE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| HENRY FORD HEALTH | ) | **JURY TRIAL DEMANDED** |
| SYSTEM, HFII CORPORATION | ) | |
| d/b/a HENRY FORD | ) | |
| INNOVATION INSTITUTE, | ) | |
| and JOSEPH JANKOWSKI, | ) | |
| | ) | |
| Defendants | ) | |

# COMPLAINT

Plaintiff Jonathan Van Lare, for his complaint against Defendants Henry Ford Health System, HFII Corporation d/b/a Henry Ford Innovation Institute, and Joseph Jankowski, alleges the following:

## Nature of the Case

1. Plaintiff Jonathan Van Lare, PharmD, has dedicated his career to specialty pharmaceuticals, a growing field focusing on complex, chronic, and rare medical conditions that require specialized, typically expensive medications.

2. Van Lare worked in Defendant Henry Ford Health System's specialty pharmacy division, Pharmacy Advantage, from 2007 to 2020. While there, he conceived and developed DromosPTM, an innovative system and platform that

1

streamline the complex administrative tasks required for specialty pharmacy services, leading to better patient outcomes and higher profits for pharmacies.

3. Van Lare properly submitted DromosPTM to the Henry Ford Innovation Institute, an initiative of Henry Ford Health System that ostensibly supports employee innovation. Henry Ford promises participants a percentage of net royalty income from intellectual property commercialized through the program.

4. Defendants subsequently indicated to Van Lare that he would receive a portion of the net royalty income from DromosPTM. For example, Defendant Joseph Jankowski, Director of the Innovation Institute, indicated this more than once.

5. In reliance on these promises, Van Lare worked tirelessly to help bring DromosPTM to market. The platform is now highly successful and growing, having brought in millions or tens of millions in royalties to date.

6. But Van Lare, the platform's creator, has not received a penny.

7. Ironically, Henry Ford has boasted that "[t]he Dromos story is a great example of how Henry Ford Health employs innovation to address its patients' needs and then utilizes entrepreneurial activities to share its solutions throughout the world." In reality, Defendants broke their promises and have wrongfully failed to reward the entrepreneurial efforts Van Lare undertook on their behalf.

8. Therefore, Plaintiff brings claims for breach of contract, promissory estoppel, silent fraud, and other causes of action to recover his rightful share of the

licensing royalties that his innovation has already generated and will continue to generate.

## Parties

9. Plaintiff Jonathan Van Lare, PharmD, is a citizen of Canada who resides, and at all relevant times has resided, in Ontario, Canada.

10. Defendant Henry Ford Health System ("Henry Ford") is, and at all relevant times has been, a Michigan nonprofit corporation with a principal place of business in Detroit, Michigan.

11. Defendant HFII Corporation d/b/a Henry Ford Innovation Institute ("HFII") is, and at all relevant times has been, a Michigan nonprofit corporation with a principal place of business in Detroit, Michigan.

12. Defendant Joseph Jankowski works, and at all relevant times has worked, for Defendants in Detroit, Michigan. On information and belief, he lives, and at all relevant times has lived, in the Detroit, Michigan area.

13. On information and belief, HFII is a wholly owned subsidiary of Henry Ford.

## Jurisdiction and Venue

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

15. This Court has personal jurisdiction over the corporate Defendants because each of them is incorporated in Michigan and has its principal place of business in Michigan and in this District. This Court has personal jurisdiction over Defendant Jankowski because the claims against him arise out of his purposeful conduct in Michigan and in this District and because, on information and belief, he lives in Michigan and in this District.

16. Venue is proper under 28 U.S.C. § 1391 because some or all Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## General Allegations

17. Plaintiff Van Lare is a pharmacist by training.

18. From 2007 to 2020, Van Lare was employed by Defendant Henry Ford Health Services, a healthcare services provider.

19. Van Lare was initially hired as a clinical staff pharmacist in Henry Ford's specialty pharmacy division, Pharmacy Advantage.

20. He was later promoted to Supervisor of Clinical Services, then to Manager of Clinical Services, and finally to Director of Clinical Services at Pharmacy Advantage.

21. After joining Henry Ford, Van Lare started conceptualizing and developing an innovative workflow system—eventually dubbed DromosPTM—that

would streamline prior authorizations, enhance coordination of financial assistance, and improve patient monitoring and reporting for specialty pharmacies.

22. The workflow system was initially built and operated using spreadsheets created by Van Lare.

23. Later, Van Lare sought, and received, permission to hire an outside development firm to turn the system into a software platform.

24. Van Lare personally directed the development of the platform in accordance with the system and processes he developed.

25. In 2013 or 2014, DromosPTM was launched internally at Pharmacy Advantage.

26. Not long thereafter, Van Lare and his supervisor submitted the Henry Ford Health System Record of Invention and Invention Disclosure ("Disclosure Form"), describing the platform as "An Integrated Patient Management and Coordination of Care Clinical Software."

27. The Disclosure Form provides, among other things: "The undersigned hereby acknowledges and agrees to the terms of the Henry Ford Health System Intellectual Property Policy and Procedures."

28. The Henry Ford Health System Intellectual Property Policy and Procedures ("IP Policy") in turn states that "50% of the Net Royalty Income shall be distributed to the inventor, and the remaining 50% shall be retained by HFHS."

29. Later that year, Van Lare asked a representative of the corporate Defendants if he would receive royalties in the event he decided to retire from Henry Ford. The representative answered in the affirmative.

30. Later, Defendant Jankowski, on behalf of the corporate Defendants, indicated to Van Lare on more than one occasion that he would receive a portion of the net royalty income.

31. In reliance on Defendants' promises, Van Lare worked for about six more years to further refine DromosPTM and bring it to market for Henry Ford.

32. During these years, he routinely spent 10 to 12 hours per week beyond his regular job duties in clinical services to keep the project moving forward.

33. But Defendants were stringing Van Lare along, never informing him that he would not receive royalties.

34. In 2019, Defendants announced that an exclusive license agreement for DromosPTM had been signed with a company called Semita. Semita is reportedly a "spinoff" of Henry Ford.

35. In 2020, CarepathRx, a coordinated care company, acquired Semita.

36. DromosPTM was soon adopted by more health systems and specialty pharmacies around the country and became one of CarepathRx's core offerings.

37. Meanwhile, Henry Ford maintained its position as licensor and has continued receiving royalty income from the technology.

38. Henry Ford also reportedly maintained a minority stake in Semita.

39. By 2022, Henry Ford had reportedly earned $5 million in royalties from DromosPTM, with another $20 million projected in the years to follow.

40. In 2023, it was announced that a private equity company associated with a major health system was making a "significant" investment in CarepathRx.

41. On information and belief, DromosPTM was a substantial driver of that company's decision to invest. Moreover, on information and belief, the investment has led and will lead to further increased royalty revenues from DromosPTM.

42. Nevertheless, Van Lare has never received any royalties whatsoever.

## Count I: Breach of Contract
### *(Against Henry Ford Health System)*

43. Plaintiff incorporates and restates all of the foregoing allegations.

44. The signed Disclosure Form is a valid contract that binds Henry Ford Health System to the terms of the IP Policy.

45. Henry Ford breached the IP Policy, and therefore the contract, by failing to pay royalties to Plaintiff.

46. Additionally, to the extent Henry Ford maintains that it had discretion under the contract concerning how royalties were paid, any exercise of such discretion to withhold royalties from Plaintiff was made in bad faith and breached the implied covenant of good faith and fair dealing.

47. Plaintiff suffered damages as a result of Defendants' breaches, including substantial uncompensated time devoted to DromosPTM and the loss of his share of net royalty income from DromosPTM.

### Count II: Promissory Estoppel
*(Against the Corporate Defendants)*

48. Plaintiff incorporates and restates all of the foregoing allegations.

49. The corporate Defendants promised to pay Plaintiff certain royalties.

50. The corporate Defendants should reasonably have expected this promise to induce action of a definite and substantial character on the part of Plaintiff.

51. The promise did in fact induce action of that character, namely, Plaintiff's continued work developing DromosPTM and bringing it to market.

52. The promise must be enforced to avoid injustice.

53. Plaintiff suffered damages as a result of The corporate Defendants' actions, including substantial uncompensated time devoted to DromosPTM and the loss of his share of net royalty income from DromosPTM

### Count III: Unjust Enrichment
*(Against the Corporate Defendants)*

54. Plaintiff incorporates and restates all of the foregoing allegations.

55. The corporate Defendants received a benefit from Plaintiff, namely, the creation, development, and marketing of the DromosPTM system and platform.

56. Inequity to Plaintiff has resulted in that Van Lare worked to develop and promote DromosPTM over and above his normal duties at Pharmacy Advantage, he did so at the corporate Defendants' behest and in reliance on its representations, and they have profited from his labors without compensating him.

### Count V: Negligent Misrepresentation
*(Against All Defendants)*

57. Plaintiff incorporates and restates all of the foregoing allegations.

58. Defendants owed Plaintiff a duty of care.

59. On information and belief, Defendants' assurances to Plaintiff that he would be paid a portion of the net royalty were false when made.

60. These assurances were made without reasonable care.

. 61. Plaintiff detrimentally relied on the assurances by continuing work developing DromosPTM and bringing it to market.

62. Plaintiff's reliance was justifiable.

63. Defendants' negligent misrepresentation caused indignity and a sense of outrage to Plaintiff.

64. Plaintiff also suffered compensatory damages as a result of Defendants' negligence, including substantial uncompensated time devoted to DromosPTM and the loss of his share of net royalty income from DromosPTM.

## Count IV: Silent Fraud
### *(Against All Defendants)*

65. Plaintiff incorporates and restates all of the foregoing allegations.

66. On information and belief, the corporate Defendants did not intend to pay royalties to Plaintiff.

67. Defendants knew this fact.

68. Defendants had a duty to disclose this fact to Plaintiff.

69. Defendants failed to disclose this fact to Plaintiff.

70. Defendants' failure to disclose this fact caused Plaintiff to have the false impression that he would be paid royalties for DromosPTM.

71. Defendants knew that their failure to disclose this fact to Plaintiff would create a false impression and intended that Plaintiff rely on the false impression.

72. Plaintiff relied on the false impression by continuing to work on DromosPTM over and above his regular job duties.

73. Defendants' failure to disclose the truth was willful, wanton, and in reckless disregard of Plaintiff's rights.

74. Defendants' failure to disclose caused indignity and a sense of outrage to Plaintiff.

75. Plaintiff also suffered compensatory damages as a result of the silent fraud, including substantial uncompensated time devoted to DromosPTM and the loss of his share of net royalty income from DromosPTM.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all matters so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court rule in his favor and against Defendants, and that the Court grant the following relief:

(a)   Actual damages in an amount to be proven at trial;

(b)   Punitive or exemplary damages;

(c)   Prejudgment and post-judgment interest;

(d)   Costs and any attorney's fees that may be recoverable; and

(e)   Any and all other relief to which Plaintiff may be entitled.

Dated: October 30, 2025

Respectfully submitted by:

/s/ Maxwell Goss
Maxwell Goss (P78594)
**GOSS LAW GROUP**
2701 Cambridge Court, Suite 100
Auburn Hills, Michigan 48326
Telephone:  (248) 266-5879
Email: max@gosslawgroup.com


/s/ H. Joel Newman
H. Joel Newman (P38459)
**H. JOEL NEWMAN PLLC**
2145 Crooks Road, Suite 220
Troy, Michigan 48084
Telephone:  (248) 723-1238
Email: hjn@hjoelnewman.com