# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JONATHAN VAN LARE,

        Plaintiff,

v.

HENRY FORD HEALTH
SYSTEM, HFII CORPORATION
d/b/a HENRY FORD
INNOVATION INSTITUTE,
and JOSEPH JANKOWSKI,

        Defendants.

Case No. 2:25-cv-13468

Hon. Brandy R. McMillion
United States District Judge

/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS II, IV & V OF PLAINTIFF'S COMPLAINT (ECF NO. 8)

Plaintiff Jonathan Van Lare, PharmD ("Plaintiff" or "Van Lare") accuses Henry Ford Health System ("Henry Ford"), Henry Ford Innovation Institute ("the Innovation Institute"), and Joseph Jankowski ("Jankowski") of improperly failing to pay him royalties in connection with his development of DromosPTM—an innovative system for complex administrative tasks used for specialty pharmacy services. On October 30, 2025, Plaintiff filed his Complaint with this Court to recover from Defendants for breach of contract, promissory estoppel, unjust

1

enrichment, negligent misrepresentation, and silent fraud. *See generally* ECF No. 1. On December 23, 2025, Defendants filed a motion to dismiss Count II (promissory estoppel), Count IV (silent fraud), and Count V (negligent misrepresentation). ECF No. 8. The Motion has been fully briefed, and the Court will rule on the record before it. *See* ECF Nos. 12, 13; E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss Counts II, IV, and V (ECF No. 8).

## I.

Plaintiff, a clinical staff pharmacist, was employed within the specialty pharmacy division at Henry Ford from 2007 to 2020. *See* ECF No. 1, PageID.1, 4. He initially worked as a clinical staff pharmacist at Pharmacy Advantage—Henry Ford's specialty pharmacy division. *Id.* at PageID.4. At Pharmacy Advantage, he was promoted to Supervisor of Clinical Services, Manager of Clinical Services, and then Director of Clinical Services. *Id.* at PageID.4. There, Van Lare also developed DromosPTM, "an innovative system and platform that streamline the complex administrative tasks required for specialty pharmacy services, leading to better patient outcomes and higher profits for pharmacies." *Id.* at PageID.1-2. Plaintiff then properly submitted the technology to the Innovation Institute—a Henry Ford initiative tasked with supporting employee innovation. *Id.* at PageID.2. Among other things, Van Lare: (1) created the spreadsheets that were used to initially build

and operate DromosPTM; (2) sought and received permission to hire an outside development firm to transition DromosPTM into a software platform; and (3) personally directed the platform's development. *Id.* at PageID.5. The technology internally launched at Pharmacy Advantage around 2013-2014. *Id.*

Shortly thereafter, Van Lare and his supervisor submitted a Record of Invention and Invention Disclosure ("Disclosure Form"), which included, in part, that "[t]he undersigned hereby acknowledges and agrees to the terms of the Henry Ford Health System Intellectual Property Policy and Procedures [(the "IP Policy")]. ECF No. 1, PageID.5. The IP Policy's "Distribution of Proceeds" section reads as follows:

> **<u>DISTRIBUTION OF PROCEEDS</u>**. Net Proceeds derived by Henry Ford Health System from the commercialization of Intellectual Property shall be shared with the Creator on the basis of a determination made by Henry Ford Health System in its sole discretion. "Net Proceeds" is defined in the Procedures for Implementation of the Henry Ford Health System Intellectual Property Policy. Generally, Net Proceeds shall be distributed as follows: 50% distributed to the Creator, and the remaining 50% distributed to Henry Ford Health System. In the event that there is more than one Creator from Henry Ford Health System, then 50% of the Net Proceeds shall be distributed to the Creators in proportion to their respective contributions, and the remaining 50% retained by Henry Ford Health System.

ECF No. 13-2, PageID.204. Nonetheless, as Van Lare understood, Henry Ford agreed to compensate him with net royalty income in connection with his work on DromosPTM. ECF No. 1, PageID.2. Relying upon this, he dedicated himself to bringing DromosPTM to market. *Id.* He claims that although Henry Ford praised

"[t]he Dromos story [as] a great example of how Henry Ford Health employs innovation to address its patients' needs and then utilizes entrepreneurial activities to share its solutions throughout the world[,]" the company left him no compensation whatsoever. *Id.* Van Lare also sought reassurance from Defendants that he would eventually be compensated. *Id.* at PageID.6. For instance, he once asked a representative of Henry Ford whether he would still qualify for royalties if he retired and recalls that the representative answered affirmatively. *Id.* Jankowski also indicated to Van Lare on several occasions that Van Lare would receive a share of the net royalty income. *Id.* As a result, Plaintiff continued refining DromosPTM for about six additional years and helped launch it for Henry Ford, by "routinely spen[ding] 10 to 12 hours per week beyond his regular job duties in clinical services to keep the project moving forward." *Id.*

To Plaintiff's surprise, in 2019, Defendants entered into an exclusive license agreement for DromosPTM with Semita—which was acquired by CarepathRx in 2020. ECF No. 1, PageID.6. Plaintiff represents that DromosPTM's reach has expanded to more health systems and specialty pharmacies while Henry Ford has remained the licensor, continued receiving royalty income, and has a minority stake in Semita. ECF No. 1, PageID.6-7. He purports Defendants have earned over $5 million in royalties but have left Plaintiff with nothing. *Id.* at PageID.7. In light of this, he filed this lawsuit on October 30, 2025 for breach of contract, promissory

4

estoppel, unjust enrichment, negligent misrepresentation, and silent fraud.  *See generally* ECF No. 1.  On December 23, 2025, Defendants filed a motion to dismiss Counts II (promissory estoppel), IV (silent fraud), and V (negligent misrepresentation).  *See generally* ECF No. 8.  Because the Motion has been fully briefed, the Court will rule based on the record before it.  *See* ECF Nos. 12, 13; E.D. Mich. L.R. 7.1(f)(2).

## II.

The Court reviews a 12(b)(6) motion by "accepting all of the complaint's factual allegations as true and determining whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  The Court "must 'construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted).  For their complaint to be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Courts must typically assess the sufficiency of the complaint "without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted).  If such materials are considered, the court generally must treat the motion to dismiss as one for summary judgment.  *Id.* (citation omitted). Nonetheless, when reviewing a 12(b)(6) motion, the Court can consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to dismiss to one for summary judgment.  *Id.* (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

### III.

### A.  PROMISSORY ESTOPPEL (COUNT II)

Defendants assert that Count II, Plaintiff's promissory estoppel claim, should be dismissed because the Complaint does not contain any clear promise alleged by Plaintiff.  ECF No. 8, PageID.35-38.  Specifically, the Complaint is allegedly void of details needed to support Van Lare's allegations that (1) a representative affirmatively answered him when he asked them whether "he would receive royalties in the event he decided to retire from Henry Ford[,]" *id.* at PageID.36-37, and (2) "Defendant Jankowski, on behalf of the Corporate Defendants, indicated to

6

Van Lare on more than one occasion that he would receive a portion of the net royalty income," *id.* at PageID.37.  Plaintiff asserts that under Rule 8(a), *Twombly*, and *Iqbal*, his allegations suffice.  ECF No. 12, PageID.173-177.

The Court first underscores that "the doctrine of promissory estoppel is cautiously applied."  *State Bank of Standish v. Curry*, 190 Mich. App. 616, 621 (1991), *rev'd in part on other grounds* 442 Mich. 76 (1993).  To determine whether the elements of promissory estoppel are met, the Court begins with "a threshold inquiry into the circumstances surrounding both the making of the promise and the promise's reliance as a matter of law."  *State Bank of Standish v. Curry*, 442 Mich. 76, 84 (1993).  To do so, the Court objectively examines "the nature of the relationship between the parties, the clarity of the representation, as well as the circumstances surrounding the making of the representation."  *Id.* at 86.  Upon conducting this inquiry in *Pinto v. Gen. Motors Corp.*, the Michigan Court of Appeals concluded, in part, that,

> "plaintiff's reliance upon any promise that defendant may have made was not reasonable as a matter of law, in light of the express written contract that exists between the litigants. The contract provides, in pertinent part: 27. NON-ASSIGNMENT: Seller may not assign or delegate its obligations under this order without Buyer's prior written consent. 31. ENTIRE AGREEMENT: ... This order may only be modified by a purchased [sic] order amendment/alteration issued by Buyer."

No. 208392, 1999 WL 33327151, at *2 (Mich. Ct. App. Dec. 10, 1999).  The facts before us are analogous.  While Van Lare claims Defendants effectively promised

him "50% of the Net Royalty Income[,]" ECF No. 12, PageID.174, he seemingly ignores the line just two sentences preceding it indicating that the distribution of proceeds is based on Henry Ford's "sole discretion."  ECF No. 13-2, PageID.204. Thus, Plaintiff's sole reliance on a promise to receive 50% of the net royalty income linked to DromosPTM was unreasonable, as a matter of law.  *Pinto*, 1999 WL 33327151 at \*2.

Nor can Plaintiff's promissory estoppel claim rest on statements he relied on by Henry Ford representatives.  In *Marrero v. McDonnell Douglas Cap. Corp.*, the Michigan Court of Appeals held that a supposed promise to plaintiff that he "would be taken care of" before he resigned was "hardly a 'definite and clear' promise." 200 Mich. App. 438, 443 (1993), *modified by Patterson v. Kleiman*, 447 Mich. 429 (1994).  Similarly, here, Plaintiff alleges he "asked a representative of the corporate Defendants if he would receive royalties in the event he decided to retire from Henry Ford [and the] representative answered in the affirmative."  ECF No. 1, PageID.6. He also alleges, "Defendant Jankowski, on behalf of the corporate Defendants, indicated to [him] on more than one occasion that he would receive a portion of the net royalty income."  *Id.*  Neither alleged promise which caused Van Lare to expect compensation for his work on DromosPTM are *clear and definitive* enough to plead a promissory estoppel claim.  *Marrero*, 200 Mich. App. at 443.  Consequently, Defendants are entitled to dismissal of Count II.

**B.     SILENT FRAUD (COUNT IV)**

In Michigan, "Supreme Court precedent clearly indicates that, in order to prove a claim of silent fraud, a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure."  *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 32 (1998). According to Defendants, Plaintiff's failure to plead facts establishing this duty is fatal to his silence fraud claim.  ECF No. 8, PageID.39.  Even if there was any duty, Defendants continue, they fulfilled it by explicitly stating their royalties policy in the company's IP Policy.

The Court may properly consider the policy because Plaintiff incorporated it by reference in the Complaint.  *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) ("Even though Rule 12(b)(6) scrutiny is limited to the pleadings, the pleadings in this case include […] exhibits attached to defendants' motion to dismiss that are referred to in the complaint.").   Plaintiff refutes Defendant's position by pointing to allegations in the Complaint about Henry Ford's duty to disclose their lack of intent to pay Plaintiff for DromosPTM.  ECF No. 12, PageID.182; *see also, e.g.*, ECF No. 1, PageID.6 ("Later that year, Van Lare asked a representative of the corporate Defendants if he would receive royalties in the event he decided to retire from Henry Ford. The representative answered in the affirmative.").  But Michigan case law makes clear that "[t]he misrepresentation

occurs when a party suppresses part of the truth when asked, not by mere nondisclosure." *Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 745 (E.D. Mich. 2006).  Here, at most, Van Lare provides mere nondisclosure, which is not enough to sustain a claim of silent fraud.

In fact, Plaintiff's silent fraud claim cannot rest on nondisclosure where the IP Policy exists and contains explicit language regarding royalties—language that Plaintiff only partially acknowledges.  *Compare* ECF No. 1, PageID.5 (alleging in his Complaint, "The Henry Ford Health System Intellectual Property Policy and Procedures ("IP Policy") in turn states that '50% of the Net Royalty Income shall be distributed to the inventor, and the remaining 50% shall be retained by HFHS'"), *with* ECF No. 13-2, PageID.204 ("Net Proceeds derived by Henry Ford Health System from the commercialization of Intellectual Property shall be shared with the Creator **on the basis of a determination made by Henry Ford Health System in its sole discretion**.") (emphasis added).

So, Plaintiff appears to want to have it both ways.  On the one hand, he relies on the IP Policy as evidence of Defendants' purported "definite and clear promise" to pay royalties.  *See* ECF No. 12, PageID.171-172.  But on the other, he asks the Court to disregard that same policy to conclude that Defendants failed to disclose an alleged intent not to pay those royalties.  *See id.* at PageID.182-184.  Thus based on the record before it, the Court does not detect any nondisclosure by Defendants.  To

the contrary, the Court finds that the IP Policy provides precisely the disclosure Plaintiff claims was lacking, thereby rendering any claim for silent fraud legally insufficient.  Count IV of the Complaint is therefore dismissed.[1]

## C.    NEGLIGENT MISREPRESENTATION (COUNT V)

Lastly, Defendants move to dismiss Plaintiff's negligent misrepresentation claim on the basis that it is time-barred.  The Parties dispute as to whether the time began running when Van Lare was allegedly injured, or when he knew or should have known about the alleged misrepresentation.  *See* ECF No. 8, PageID.40; ECF No. 12, PageID.187; ECF No. 13, PageID.197-198.  This case is based on diversity jurisdiction, so the Court will apply Michigan statutes of limitations.  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 745 (1980).

As alleged by Plaintiff, this claim is timely because his Complaint was filed "less than six years after sustaining harm [which was] in 2019 [after] Defendants announced that an exclusive license agreement for DromosPTM had been signed with a company called Semita."  ECF No. 12, PageID.187 (citing ECF No. 1, PageID.6).  Under long-standing Michigan law, "the statute of limitations [begins running when] plaintiff knows or should have known of th[e] negligent

---

[1] In addition, the Court agrees with Defendants that Plaintiff has not met the heightened pleading requirements of Fed. R. Civ. P. 9(b), which would serve as a separate ground for dismissal.  *See Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 498 (E.D. Mich. 2025) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)).

misrepresentation." *Williams v. Polgar*, 391 Mich. 6, 26 (1974).  Defendants argue that this is a basis for barring the claim because "[t]he Complaint alleges that for 11 years before Plaintiff filed his complaint and five years after the expiration of the statute of limitations, Defendants 'were stringing [Plaintiff] along, never informing him that he would not receive royalties.'"  ECF No. 13, PageID.197 (citing ECF No. 1, PageID.6).

The Court agrees that, in hindsight, Plaintiff could identify negligently misrepresentative actions by Defendants from as early as 2013.  Nonetheless, Plaintiff admits that "in reliance on Defendants' promises, [he] worked for about six more years to further refine DromosPTM and bring it to market for Henry Ford."  ECF No. 1, PageID.6.  Considering his continued work on DromosPTM, Plaintiff likely did not know—nor could have been expected to know—that Defendants negligently misrepresented their intent to pay him anticipated royalties.  To that end, the deal between Defendants and Semita may have been the first time he realized that Defendants had no intention of paying him any royalties, and therefore negligently misrepresented to him that they did.

The Court finds that Plaintiff has adequately alleged that he did not become aware of the Defendants' negligent misrepresentation until 2019, nor should he have reasonably known otherwise.  Therefore, the statute of limitations has not expired

12

as to Van Lare's negligent misrepresentation claim, the claim may proceed, and Defendants' motion to dismiss as to Count V is denied.

## IV.

Accordingly, Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED** on Counts II and IV and **DENIED** on Count V of the Complaint.

**IT IS SO ORDERED.**

Dated: March 30, 2026                    /s/ Brandy R. McMillion
      Detroit, Michigan                     Hon. Brandy R. McMillion
                                          United States District Judge